before we hear from the appellant let me just make sure we're all under the same understanding of how we're proceeding in light of the sealed information I hope you received the order what we're going to do is bifurcate that I know that wasn't everyone's preference but that's what we're going to do so we'll go with you know 16, 4, 20 time periods and then we'll give each side an additional five minutes after we do that we'll take a little break and seal the seal the record electronically and considering matters that need to be heard under that at that point so and I know the parties are cognizant of this we'll try to be so as well but don't hesitate either of you to you know to interrupt at least me I mean I know that's normally not what you feel comfortable doing with judges but we don't want to cross that line if you think we have it won't bother any of us for you to interrupt and say something. Thank you your honor. Okay with that we're we'll hear from the appellant. Thank you your honor may it please the court my name is Mike Puccini Cadell DeVries Leach and Dan Baltimore Maryland I represent the appellant Kieran Andrews. Mr. Andrews was the subject of a warrantless search for his cell phone and ultimate seizure of that cell phone by the Baltimore Police Department. The lower court failed either to understand or ignored the actual technology being used here and what it was doing. Mr. Andrews was yes a fugitive from justice he was wanted on an arrest warrant and they were having trouble finding him so instead of seeking a warrant under the Fourth Amendment which would allow them to use the technology that they used in this situation they sought something called a pen register order. A pen order for 60 days that they were going to use a pen register trap and trace device or a cellular tracking device which is not defined in any of the statutes with regard to the pen register order. The problem with the PRO is that it and your honor appellants understand that the Fourth Amendment doesn't have doesn't require that you know with particularity the police the government tells you exactly how and what they're going to do but it should at least require that it tell you that it is going to seize a specific piece of personal property and that is what happened here because what we what has been admitted in a appellee's argument is that what this technology does and I hope that I am not going beyond what we are supposed to be discussing at this point is it basically sends a very powerful electronic signal out. That electronic signal is powerful enough to pierce through the walls of private residences. That electronic signal is powerful enough to cause every telephone on that specific network signal that the technology is using at the time to connect to that technology and it may connect to it for only a second or two identifying what that specific telephone is. In this instance case the technology was set to look for one specific telephone. Hey counsel could you just on my screen at least there is a window that's popped up I don't know if that's where other people are seeing that? No idea your honor. Okay well it may just be South Carolina goblins who infected things but anyway I'm if you could proceed I'm sorry for interrupting you. No problem your honor I am as technologically unsavvy as the next person. Where was I? Yes so this court had looked at this before and had very serious qualms about whether or not and now I see the window has popped up over top of the timer so I'm not really sure I'm just seeing the last second of the timer. Now it's gone. This court had six questions with regard to the capabilities of the technology at issue. We certainly won't get into those questions but we went through discovery over a long period of time unfortunately it was truncated by COVID and we found that there was information about what this technology can do and it was but besides that and so that we don't get into areas that should be sealed what the court below fails to realize here is that the PRO could not possibly have acted as a good faith warrant because it doesn't need to name the technology being used but it certainly needs to tell you what that technology is going to do and all the PRO does is say that what they are seeking to do is install something on mr. Andrews phone a pen register is installed on the phone and the phone operates because otherwise you the pen register wouldn't work a trap and trace device is installed on the phone and the phone continues to operate So counsel can let me let me get you on that I think one of the arguments you're making is that aside from what happened afterwards that this warrant you just this PRO was not a valid warrant that would have allowed this and and as I understand the record it certainly is the form that is used and for pen register you know orders and I get that point but I'm I'm having trouble understanding why the language itself doesn't at least in a general sense describe what happens here I mean it talks about to employ duplication of facilities it talks about you know that the installation and use and so if you look at use it talks about a cellular tracking device it talks about initiating a signal to determine the location of a subject matter subject mobile phone device I I don't think a pen register does that maybe I'm wrong there and then it goes through some other language and talks about any and all locations so I appreciate how this might not be the this might typically be used for a PRTT order but I'm wondering why the language doesn't describe what happened here thank you nothing was installed in mr. Andrews phone okay mr. Andrews phone was basically seized during the time and and and this is admitted in a Peli's papers we we we have argued that what the what what this technology does is render the telephone when used in this way inoperable for anything other than what it was used for to find mr. Andrews a Peli's note in their papers that well it can't connect if he's on a call and it can't connect if he's dialing 9-1-1 so it obviously knows that but they then don't say after it has connected can he make a phone call can he call 9-1-1 is his phone still in his possession when this is attached to it and used in the manner it was being used and the answer given what we have is no the phone is rendered inoperable except for its use as a location device now in control of the government and that is the fatal flaw of the the PRO here the PRO goes and says yes it's we're gonna do this and we're gonna do this and we're gonna do this and then stops short by not saying and we're gonna take the phone and make it because that is now I'm sure that my friend will argue that it well on Wi-Fi it will be fine well on Wi-Fi that that still does not mean that it can make a phone call it does not mean that the phone is actually still in mr. Andrews possession he was in a private residence at the time it plays the Fourth possession his personal phone and while in his possession the phone was literally taken out of his control thanks let's ask you to jump at can I ask you to jump ahead to a couple questions that at least for me importantly frame this case um how in the world are the individual officers not entitled to qualified immunity the Second Circuit had a case that was extraordinarily similar to this one several years ago and said wow there's like no clearly established law about literally any of this and what happened here happened two years before that Seventh Circuit decision so I really don't understand what the plausible argument would be that these individual officers don't have qualified immunity well your honor what we'd say about the qualified immunity is that in their papers and in the evidence the officers admit that they knew that this was a signal that was sent that would go through walls okay I'm gonna tell you the fourth amendment Harlow versus Fitzgerald I literally don't care what these individual officers know okay well whether they knew or not officer Haley has testified that he understood the technology at issue the it has been taken as gospel that using the word cellular tracking device means a cell-site simulator and that everyone involved knew that it meant a cell-site simulator does that mean that everyone involved knew what a cell-site simulator does no does that does that mean that at the relevant at the time that's relevant in question would every single police officer reasonable police officer know that what they're doing here violates the Fourth Amendment and I don't see any plausible argument that they went that I believe they should because of Kylo your honor there how can we possibly turn on something electronic because I love says you have to get a warrant and these officers did something that I guess I'll posit at least a reasonable officer could believe comply with the Fourth Amendment's warrant requirement we don't see that this is a reasonable reasonable application in the Fourth Amendment because of the very fact that what this and this is this is probably our hardest argument I will admit your honor but the qualified immunity here at some point we're counting the angels dancing on the head of a pin they either know that what they're doing requires a warrant or they don't simply because the technology is new doesn't give carte blanche to then just believe what one is told these are experienced in their in their affidavit and in their PRO they talk about their experience they talk about how they know this they know that they know why don't they know that simply turning on any piece of equipment that is going to pierce the walls is somehow not required a warrant counsel just just interrupt you I mean I understand that argument and it may be successful that this you know technology does go inside a wall but seems to me there's at least yeah you know there's the issue of is this a sufficient warrant you know you have argument that they it's not but you know that there's language that might suggest it is in the warrant you know there's you know carpenter which you know has some language that I think helps both of y'all even though none of you talk much about third-party consent here you know there you mentioned the Kylo case and I appreciate that may help you but you know the the Jones and the Karo case I think have some language about tracking devices and you know this might be analogous to that and and I'm not saying those ultimately prevail but I think that gets to judge heightens question is we don't have anything that talks about this we got the Supreme Court recently saying I'm expressly not addressing real-time information how could it be clearly established your honor it's clear it's clearly established that you are have a reasonable expectation of privacy into where you are if you are in private is that true for a fugitive there's a there's a restaurant out for unfortunately I believe it is true for a fugitive who has an arrest warrant out for they certainly don't give up their rights to privacy simply because they have an arrest warrant out for them and they certainly don't they certainly don't lose their Fourth Amendment rights because there's an arrest warrant out for them. The problem that we think is fatal for this warrant PRO is not that mentioning of cell site simulator not that and not that that technology is so far-reaching and unknown they the officers knew what was going to be done they knew that they had been using a PRO and and this I'll take this to the O'Neill argument there was in fact a procedure an informal procedure in place to not discuss the cell site simulator that was to use a PRO and call it a cellular tracking device a cellular tracking device and the way these the way that the PRO reads it reads as if again I hate to sound like a broken record but we're going to put a tracking device on the phone we're not going to but what they did is turn the phone into a tracking device they didn't put something on the phone to make it able to be followed they turned the phone literally into the state's tracking device. Can I ask you about the Menel issue? So as I understand it in order to prevail on against the city you'd have to show that there was a policy or custom of the municipality that was the moving force behind the constitutional violation it seems to me that if there was a constitutional violation here it's one of two places either a it's not obtaining something that's a warrant within the meaning of the Fourth Amendment that's arguably a constitutional violation or B it's that the thing you got even if it is a Fourth Amendment warrant is insufficiently particularized or doesn't meet the requirements of a valid Fourth Amendment warrant it seems to me that the constitutional violation has to be one of those two things and I don't understand how this NDA policy is the moving force of either of those violations it doesn't say you're not allowed to go get a warrant it doesn't say that and nor does it say you know if you get a warrant the warrant can't be sufficiently particularized to comply with the Fourth Amendment so I guess I just don't understand how the NDA is plausibly the moving force behind any plausible constitutional violation here your honor the NDA is the entire reason that a warrant wasn't sought because I know that because because they sought the PRO and the instead of a warrant they tried to fit a square peg into a round hole because they could not go to the court and be forthright and honest about exactly what the NDA policy said you can't ask for a warrant there's nothing in the NDA policy that says you can't go to the judicially as judicial officer in the world and ask for the most Fourth Amendment we warrant in the world there's nothing in the policy that says you're not allowed to do that right as far as I know there is nothing that prevents them from doing that but there is something that says that they should either drop the case or not proceed with it so that they don't have to you know somehow out this technology but when you take the NDA in conjunction with the fact that they use a PRO which does not address the technology and then adds this synonym for cell site simulator they they have attempted to at least try to get some type of an order here but it was fatally flawed in that it did not not exactly what they were going to do but the far-reaching of what was the end result here not that they were going to install something that would assist them in locating mr. Andrews but that they would take thing in mr. Andrews possession and turn it into that thing that will be able to lead to council thank you you got some time for rebuttal before we go into the sealed portion thank you very much and we'll hear now from your colleague this Amada morning and it may it please the court my name is Natalie Amado and I along with my colleague Brent Schubert represent the appellees the Baltimore Police Department former Commissioner Kevin Davis and detectives John Haley and Michael Spunato the Fourth Amendment requires striking an appropriate balance between the interests of the government including public safety and protecting against arbitrary infringements on an individual's rights that balance is subject to the Fourth Amendment's broad command of reasonableness on remand the parties were asked to conduct fact-finding on several specific questions the material facts supported by a detailed evidentiary record demonstrate that appellees actions were reasonable and constitutional we asked this court to affirm judge Gallagher's opinions opinion the threshold question that really confused the heck out of me when I first read judge Gallagher's opinions so I'm looking at our previous order in this case and we remanded for the district court to make factual findings and then I'm confronted with the district court order that grants summary judgment and as someone who used to teach civil procedure the first rule of summary judgment is that you don't get to make factual findings when ruling on a motion for summary judgment so why in the world did your client because I checked who did why in the world did your client think it was appropriate to move for summary judgment after we've remanded for factual findings your honor thank you for that question I I agree that the procedural posture of this case is a little bit odd I judge Blake had asked for factual findings so there was a factual brief that was submitted and then she asked for updated positions on the law so I believe that that motion for summary judgment was an attempt to provide the updated findings and our conclusions because judge Blake's order my civ pro 101 that you don't make factual findings when you roll in a summary judgment motion well she she was entitled to say that there were no material facts of this dispute and given that's not what we told the district court to do we told the district court to make factual findings is that right I mean it does certainly we did that but didn't didn't we also say and any conclusions of law that is correct the remand order said to make factual findings and updated conclusions of law as appropriate and I believe that's judge Gallagher interpreted the the order that way and and and also attempted to synthesize a very detailed and robust evidentiary record your honor I had intended to start with the remand questions specifically but as they deal with the cell sites simulators functionality and given the the recent order I'm going to start with other issues in the case which are actually the issues that you had a lot of questions for mr. Puccini on so as the court is aware it is unsettled whether the location of mr. Andrews phone using a cell site simulator constituted a search or a seizure neither the Supreme Court nor this circuit has squarely decided this issue except you repeatedly conceded that fact before the district court and during our previous appeal and even in your current briefs you don't actually argue it's not you just reserve the right which I also don't understand because that seems like a fundamental violation of civil and appellate litigation 101 you like the time to make the argument is now it's not to say we'd like to preserve our ability to make an argument that we've never made before you're and I was actually just about to say that we had previously conceded only for the sake of argument though if you go through the record you'll see that the motion to dismiss an alternative summary judgment in 2017 that's at J at 51 we said it was only for the sake of argument and that was because it judge Blake in a hearing what does it really is it really counsel does it really matter if you conceded it you can I mean you if you can see that you can see that you can't concede it and then like argue against it I mean what some point we got a you know go with your concessions unless you like formally withdraw them I guess we could look at that but I mean why are we talking about something even if it might be a good argument that you've conceded for purposes of argument well your honors can decide the case on any issue that you wish to imply any doctrine of Fourth Amendment jurisprudence that you choose to including the third party doctrine if you chose to do that but frankly the record is very how can we do that without violating the mandate rule I'm literally looking at our previous opinion in this case defendants concede that the hailstorm simulator searched at minimum Andrews phone and that it's used thus required a warrant that is a statement by this court and a published opinion in this case respectfully your honors we don't agree that that remand order accurately reflected the record then the answer is file a motion for rehearing or for us to correct our order because we've misunderstood what you said but there's a published opinion of this court that you conceded it and and I I hear your honor on that point we reserved our right in an abundance of caution and you know we were asked by Judge Blake to assume for the sake of argument that it was a search and so I think that sort of counsel you got I mean you got like 15 more minutes and if you want to argue things you've conceded you know that's your prerogative but you know a more helpful thing I would just encourage you to you know help us with things that you hadn't conceded as well but yes it's your your time use it however you want to though assuming it was a search Judge Gallagher and Judge Blake correctly held that there was a valid court order that was the functional equivalent of a warrant to locate Andrews's phone whether a document is called a warrant or an order is not material so long as it satisfies the mandate of the Fourth Amendment Andrews's attempt to subject this warrant to in this case to a hyper-technical non-common-sense review must be rejected as this court explained in United States versus Strieva Strava the contents and scope of a warrant and it's supporting up affidavits must be evaluated in a common sense and realistic fashion eschewing technical requirements of elaborate specificity in Dahlia if we were agree with let's just pause it for a moment that we agree with you that a pro can be a warrant in this particular case what what's the probable cause that the magistrate found in this pro and how does that satisfy the probable cause requirement your honor the probable cause was that the cell phone at issue was connected to the crime and that that cell phone would lead to the location Andrews's cell phone connected how is the cell phone connected to the crime it was indeed your honor that was the cell phone number that was used to transfer the victims to the location of the shooting and that cell phone number was identified by the victims and corroborated by the cell phone records that were obtained it was also independently corroborated by BPD's databases and it was also corroborated by his CI handler at BPD so there were multiple things that connected not only the phone to the crime at issue but also to mr. Andrews so we believe there was a very solid basis for that judge Williams had a substantial basis for the probable cause and also as part of that judge Williams was aware that mr. Andrews was alluding and that the officers had a valid arrest warrant to effectuate on him I would also note that there's been some does there need to be any connection between the phone and the isn't the probable cause we have great reason to believe that this gentleman committed this crime we have great reason to believe that this is that gentleman's cell phone account and because of basic facts that every adult knows about the world in 2026 we have pretty good reason to believe his cell phone is probably somewhere near him so valid your honor that was all part of the probable cause analysis and it's related to you know he had probable cause to believe that location of the phone would lead to apprehension of this particular individual who was identified as being involved in the crime so let counsel let's let's assume for argument you have probable calls and a valid that that that sends electronic signals into a residence your honor in this instance we believe that it does that was specifically identified in the the the warrant that it would initiate a signal that is exactly what a cell site simulator does what does it matter for sure I mean I think it does say that but is there does it matter that the signal goes into a residence or not does that fact matter so there I think there's two reasons why it does not matter in this case I think the first reason is sort of is is is Kylo which is that this technology does not reveal anything intimate about the home it does not even reveal who's present inside the phone just just is inside the home just where the phone is it does not provide any reveal any intimate details about what goes on inside the home and then the second is sort of let me get let me respond on that one I know you got another one so I'll try to remember to you to not forget that and give you time for sure but yeah fair I think there's a I think there's a fair argument the that the information obtained is different than you would get from the you from from the technology in Kylo but it is something that would not have been observable you know from the the public streets or the curtilage of the house I mean there's no question about that number one and number two is it in some way a little bit more of an invasion of the home then Kylo because it's sending signals into the house as opposed to you know understanding or determining what you know that the heat coming from the house means so I would argue that is actually less invasive than Kylo in there they were targeting a specific home and they were trying to find incriminating information and the technology they were using was was specifically to detect that now in this instance but why was all right does that even matter but in Kylo the question was not whether you could use the technology the question was whether you had to get a warrant to use the technology so even if this is as or more invasive than Kylo all that suggests to me is that you have to get a warrant not that you can't get a warrant to do it all right to do it and in this instance the the information is much less intrusive it's anonymous electronic identifiers so but also your honor I think with a cell phone they're constantly throwing up their own signal so this idea that it's just penetrating the home I think that's sort of a misplaced argument the phone itself is already acting to throw signals out and those go the other way they go outside the home I mean the fourth agenda is fourth amendment jurisprudence also can't be so stuck as technology involves thinking of searches to just involve a physical place necessarily the fourth amendment protects people not places and well it's still important I think we have to be focused on what was actually saw here which was a phone which by its definition is mobile across the entire world to the second argument that I was going to make is related to Peyton and Steven Seagal than its progeny you know this phone could have been located anywhere it could have been on a public street it could have been in a home it could have been in a business but in this instance there's nothing in the record there's no evidence that mr. Andrews had a privacy interest in that home there was a proffer at the criminal court that was not under oath he's never submitted an affidavit or anything to that effect and so the officers had a warrant and if they had a reasonable belief that he was present in that home they were able to go in and effectuate that warrant but they didn't just do that they got consent to go inside and when they located him in the living room which was a common area even if he'd had a privacy interest in that home it was an interest that was diminished because he was located in a common area and a co resident allowed allowed them consent although we do not see that he had a privacy interest miss Amato what I what I hear you saying is that this technology was really used for the purpose of locating locating the individual rather than really for the purpose of continuing an ongoing investigation and so and really when I look at the application I see nothing in the application that goes to your prior argument that the phone was used as part of the crime there's really nothing in the application making that allegation really the application talks about locate locating the individual do you have a case that supports what I sound what sounds like you're arguing is that it would be proper to use this technology to locate an individual as opposed to investigating a crime and I don't see any cases that support that proposition so in the application it does say that they were attempting to effectuate the warrant and locate the person in effectuate an apprehension which is what the Fourth Amendment contemplates but the Fourth Amendment also contemplates that you can look for evidence of a crime and in this case this phone happened to be but the pro application doesn't talk about looking for evidence of a crime it talks about looking for mr. in I mean it does it talks about how this phone number was connected to him and he was the shooter this was judge Williams in this case had also tell me where exactly in the pro application it talks about continuing the investigation of the crime I'm not suggesting that they were continuing investigation the crime I'm just under the Fourth Amendment you can search for I'm not talking about I'm talking about this particular pro application I read this proplication as applying for a pro to help in locating the individual so that's the case is do you have any support for your proposition that this technology may permissibly be used to locate an individual so this technology is to locate a phone that was attached to a particular individual the pro application does say investigators were able to tame mr. Andrews cell phone number through the victim's cell phone number and the judge Williams had also approved other applications in this case that detailed the crime more thoroughly about the use of the of the phone during the shooting but again that's just a general Fourth Amendment principle that you can use a search warrant to search for evidence of a crime you're right that the application was for this phone that's what they did there's no evidence that they obtained or accessed any content on this phone at any point and there's no evidence that any content in his phone or any other party's phone was ever used events against mr. Andrews in the criminal trial or even that they tried to do that so if I if your honor would permit me to move on other two other matters unless you have any other questions so your honors I believe that the Dahlia standard is also met here as was discussed with mr. Andrews attorney there was very specific detailing of the technology in the warrant itself they did not exceed the scope of the warrant and they did not withhold any information from the magistrate there's no evidence that judge Williams abandoned his role as a neutral and disinterested magistrate but let me preface this by saying that I'm not sure this matters under Virginia versus more which I generally read to stand for the proposition that the Fourth Amendment doesn't care about what state law says but it does seem strange because you keep saying they got a warrant they got a warrant they got a warrant they got a warrant they got a warrant but actually they didn't at least seemingly under Maryland law get something how one gets a warrant under Maryland law is there any explanation of why that is the case from your perspective in the record and second of all why shouldn't that at least again be troubling even positing maybe that Virginia versus more says none of that matters when you say why that doesn't you keep saying today that it's a warrant except that under Maryland laws your friend represents like there's a way to get a warrant a thing called a warrant under Maryland law they didn't get a warrant they got something called a PRO order and they went to a different person got a different order again I'm willing to entertain the proposition that the Fourth Amendment ultimately doesn't care about that but what's the like non bad explanation for why they your friend represents oh I know why they did it they were trying to avoid seeking a full-on warrant for some reason and I I guess I didn't see in your papers any plausible counter narrative for why they did what they did here Green actually testified that that part of the reason they went under the PRO statute was because that was the Maryland state statute that involved electronic devices at the time and so with in the absence of any clearly established law they believe that that would be the appropriate type of document to use he also testified that Judge Williams was very involved in developing that that document and so I'm a little puzzled by your statement that they went to another judge they didn't do that they went to Judge Williams in this case for a warrant and he also approves warrants Judge Green specifically testified that in the spring legislative session so which would have happened before April of 2014 so before Andrews's location Judge Williams was involved in the development of this document so he was well aware of what was being asked for and they were attempting to create a document they were attempting to to obtain an order supported by probable cause which they believe was the functional equivalent of a warrant in a way that would best describe the technology and so I think that was the intention here it's also been suggested that they did this to sort of go around the NDA there's no evidence in this case that that occurred but even in their opening argument when this case was heard back in 2020 in front of this circuit they acknowledged that BPB had been using these applications since at least 2007 and so that attempt to sort of go around an NDA that was authored in 2011 is really unavailing here they tried to obtain what they thought was the appropriate doc document and they tried to comply with the Fourth Amendment they went above and beyond in describing the technology and what they intended to do and they and they followed it and they didn't exceed the scope and your honor I see that my time is about to elapse so as long as there are no further questions I would submit on my papers Judge Highton's Judge Berner do y'all have any other questions no other questions thank you for your argument counsel will Mr. Puccini we you have four minutes and rebuttal I think you're on mute you're on mute sorry your honor well I said you're on mute rather than mute so you know I've been a judge too long for not mess those up but anyway go ahead thank you individuals do have a reasonable expectation of privacy in their non anonymous location history death this court has said that mr. Andrews location data was real-time his phone was literally turned into nothing more than a GPS location device in the possession of the state that requires a warrant we're not saying that cell site simulators cannot be used everyone has a cell phone now it's become an appendage AI cannot recognize us without a cell phone in our hands not that I put much stock in AI it case law but it count like my friend just basically admitted that there is a Monell element here in that judge Williams and everyone got together and came up with a procedure to not seek a warrant for these this technology but to around it now do I know if that was in because of the NDA the NDA existed they were well aware of the NDA what other plausible reason would they have for not simply going well let's just get a warrant we know what we're doing here we know we're sending up an electronic impulse we know that it certainly the phone sends out an electronic impulse it's a back-and-forth but the phone picks up on the strongest signal the cell site simulator becomes the strongest signal the phone doesn't have a choice the only choice is turn it off so we would submit your honor that this case should be remanded for the fact finding that was supposed to be done and not a summary judgment without any kind of identification of what the actual facts our because the facts seem to have been misunderstood you now just said the district court admittedly I gave your friend on the other side some grief about that but I also checked that when they move for summary judgment I did not see a response from your client going no no no no no the Fourth Circuit made factual said make factual findings you can't do summary judgment I don't see anything in the district court record where your client objected to the district court proceeding the way it did am I right about that on paper we did not that is correct your honor in in in in phone conferences we complained about all of the motions but we did because we don't really not say you're violating the Fourth Circuit's mandate by not making factual findings you did not say that before to judge you we did not say that your honor we did not say that correct that is correct but what we would ask this court to do is remand this for for a proper understanding of what the factual predicates are and what we will discuss in our next session further discovery thank you counsel any other questions before we take a recess and and and go into a sealed discussion hearing none madam clerk if you would do whatever we need to do to accomplish that yes your honor this court will take a brief recess if everybody could stay on
judges: A. Marvin Quattlebaum Jr., Toby J. Heytens, Nicole G. Berner